**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, Jeff Morgan and Van Huseman, Appellants,**

v.

**Guy ALLISON, Dan Alfaro, Holland American Insurance Company, Houston General Lloyds, Robert Patterson, Albert Huerta and Gerald Beckman, Appellees.**

No. 13–85–022–CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 30, 1985.

Rehearing Denied Sept. 26, 1985.

Allen Wood, Corpus Christi, George Pletcher, Steve A. Bryant, Houston, for appellants.

Russell McMains, William Edwards, Corpus Christi, for appellees.

Before KENNEDY, UTTER and SEERDEN, JJ.

## OPINION

KENNEDY, Justice.

This a summary judgment case. Appellants and appellees each filed motions for summary judgment. The trial court granted the appellees' motion and denied appellants' motion.

The facts of this case are essentially undisputed and neither party alleges that a fact issue exists. On April 7, 1981, there was an explosion at the public grain elevator, owned and operated by the Nueces County Navigation District No. 1 in Corpus Christi, Texas.[1] A number of persons were injured and killed, and suit was filed against several defendants, including CEA. Carter-Day Company (hereinafter Carter-Day).[2] Carter-Day, through its insurance company, National Union, entered into a

---

1. Under certain circumstances, grain dust is explosive.

2. CEA.Carter-Day was a supplier of dust control equipment to the Navigation District.

number of compromise and settlement agreements with the various plaintiffs in that suit. The agreements were of the "Mary Carter" type in each case. It was contemplated by those agreements that the plaintiffs and Carter-Day would continue to prosecute claims against other defendants and that Carter-Day would be reimbursed for funds advanced under the agreement out of other settlements or awards resulting from the suits. The following language is typical of one of the agreements under dispute:

> It is further agreed and understood by the parties that it is the parties' intent that National Union be reimbursed to the extent of monies expended on behalf of the undersigned plaintiff, except as set forth below. In accordance with such intention, it is agreed and understood that to the extent that plaintiff is entitled to the proceeds of any further judgment or settlement in any capacity, *that fifty cents of each dollar of such monies actually recovered and paid to plaintiff shall be simultaneously paid over directly to Nation Union* up to the maximum of EIGHT HUNDRED EIGHTY-SIX THOUSAND SIX HUNDRED TWENTY-ONE AND NO/100 DOLLARS ($886,621.00) and regardless of the capacity in which such amounts are recovered. (from the Valdez Agreement) (emphasis added)

It is the interpretation of the above-quoted language that is in dispute in the case before us today. Appellants are the insurer of Carter-Day and its representatives. Appellees are the attorneys, who represented the plaintiffs on a contingent fee basis in the underlying cause. Appellants argue that they should receive the funds in reimbursement of the money advanced under the settlement agreements before the appellees, attorneys for plaintiffs in the underlying cause, receive their attorneys' fees. Appellees assert that they should receive their attorneys' fees before funds are distributed to the plaintiffs in the underlying cause *and to appellants. As illustrated by the table in the Appendix, there is a substantial difference in the amount received by each of the interested parties, depending upon which interpretation of this language is accepted.

Neither party alleges that the above-quoted language is ambiguous, and both assert that the trial court should have granted them a motion for summary judgment as a matter of law based upon this language.

■ Appellants bring forth four points of error asserting that (1) the plaintiffs in the underlying cause were necessary parties to the suit before this court, (2) that the trial court erred in granting appellees' motion for summary judgment, (3) that the trial court erred in overruling appellants' motion for summary judgment and (4) that the trial court erred in holding that the payback provision quoted above does not apply equally to both the clients and their attorneys. Appellants, by their first point of error, complain that the trial court erred by overruling defendant's Special Exception in that appellees' clients, parties to the underlying agreement, were necessary parties. We agree.

■ Joinder of parties in a declaratory judgment case is governed by both the Declaratory Judgment Act, TEX.REV.CIV. STAT.ANN. art. 2524–1 (Vernon 1965), and by Tex.R.Civ.Pro. 39. The provisions of Rule 39 and Section 11 of the Declaratory Judgment Act are compatible. *Clear Lake City Water Authority v. Clear Lake Utilities Co.,* 549 S.W.2d 385 (Tex.1977). Subdivision (a) of Rule 39 and Section 11 of the Declaratory Judgment Act are both mandatory provisions and both provide, in slightly different language, that individuals claiming an interest which would be affected or prejudiced by the judgment in the case shall be joined in that case. The Supreme Court in *Clear Lake Water Authority* rejected the construction of Article 2524–1, § 11, which makes the decision of the trial court to proceed in the absence of a party whose interest would be affected by the declaration fundamental error in all cases. However, it is clear that there are still cases in which it would be improper to

proceed in the absence of a person whose interest would be affected. This is one of those cases. It has long been the law under Rule 39 that parties to a contract are necessary parties to a suit on the contract. *Bradco Oil and Gas Co. v. Rowan,* 437 S.W.2d 58 (Tex.Civ.App.—Houston [1st Dist.] 1968, no writ). *McNeil v. McLain,* 272 S.W.2d 573, (Tex.Civ.App.—Fort Worth, 1954, no writ); 44 Tex.Jur.2d Parties § 3 (1963). *See also Moerbe v. Meece,* 630 S.W.2d 278 (Tex.App.—Austin 1981) affirmed in part and reversed in part, 631 S.W.2d 729 (1982); *Triton Oil & Gas Corp. v. E.W. Moran Drilling Co.,* 509 S.W.2d 678 (Tex.Civ.App.—Fort Worth 1974, writ ref'd n.r.e.).

It is clear from the examination of the table laid out in the appendix that the appellees' clients would be affected by the judgment in this case and have an interest in the subject matter of the suit and that the clients' interest is adverse to their attorneys'.[3] Therefore, we find that the appellees' clients are necessary parties to this suit and that it was error for the trial court to proceed in their absence.

■ The appellees argue that the trial court properly overruled appellants' special exception, pointing out the omission of appellees' clients as parties, since the pleading was unsworn. Tex.R.Civ.Pro. 93 provides:

A pleading setting up any of the following matters, *unless the truth of such matters appear on record,* shall be verified by affidavit.... ·

[e]That there is a defect of parties, plaintiff or defendant. (emphasis is added)

We find from an examination of the record that there is no such affidavit setting up a defect of parties. However, we do find that the truth of the matter, that is that there is a defect of parties, appears on the face of the plaintiffs' petition. Plaintiff-Appellees' live pleading at the time of trial was their First Amended Petition for Declaratory Judgment. Attached to plaintiffs' First Amended Petition for Declaratory Judgment were copies of all the relevant agreements: (1) the Mary Carter Agreements between appellant, National Union Fire Insurance Company, and appellees' clients and (2) the agreements between appellees and their clients. From a reading of all of these, it is apparent that (1) appellees' clients' interests would be affected and (2) that they were signatories to the contract to be interpreted by the Declaratory Judgment. We believe that these two facts are sufficiently shown in the First Amended Petition for Declaratory Judgment so as to make a verified pleading on the part of appellants unnecessary under Rule 93. Therefore, appellants' first point of error is sustained.

Because of our disposition of the first point, a discussion of the remaining points is not necessary to the disposition of the appeal and they will not be addressed. Tex.R.Civ.P. 451.

The judgment of the trial court is reversed and remanded.

---

3. If, for example, in the de la Santos case, the final recovery from all other parties was less than $6,000,000.00, the interest of the de la Santos family would be the same under either interpretation. The de la Santos family would recover one-third the total amount. However, if the recovery from all other parties was, for example, $7,000,000.00, under appellants' theory the de la Santos family would recover $2,666,667.00 (⅓ of the first $6,000,000.00 and ⅔'s thereafter). But under appellees' theory, the de la Santos family would recover only $2,333,333.00 (⅓ of the total).

## APPENDIX

### DISTRIBUTION[1]

| Agreements | Appellant's Interpretation | | | Appellee's Interpretation | | |
|---|---|---|---|---|---|---|
| | Nat'l. Union | Attorney | Client | Nat'l. Union | Attorney | Client |
| **1. Valdez —⅓ fee to Attorney —50% to Nat'l. Union up to $886,621** | | | | | | |
| Recovered from other parties to date $1,008,905 | $ 504,453 | $168,151 | $ 336,302 | $ 336,302 | $ 336,302 | $ 336,302 |
| Future recovery of each $100 until Nat'l. Union receives $886,621 | 50.00 | 16.67 | 33.33 | 33.33 | 33.33 | 33.33 |
| Total needed to pay back Nat'l. Union | $ 886,621 | $295,540 | $ 591,081 | $ 886,621 | $ 886,621 | $ 886,621 |
| | | —$1,773,242— | | | —$2,659,863— | |
| **2. Tripp —⅓ fee to Attorney —50% of excess over $100,000 up to $1,000,000 to Nat'l. Union** | | | | | | |
| Recovered from other parties to date $1,211,872 | —0—[2] $55,936 | $ 33,333 +18,531 $ 51,864 | $ 66,667 370,624 $447,291 | —0—[2] $370,624 | $ 33,333 370,624 $403,957 | $ 66,667 376,624 $437,291 |
| Future recovery of each $100 worth until Nat'l. Union receives $1,000,000 | 50.00 | 16.67 | 33.33 | 33.33 | 33.33 | 33.33 |
| Total needed to pay back Nat'l. Union | $1,000,000 | 33,333 333,333 $366,666 | 66,667 666,667 $733,334 | $1,000,000 | 33,333 1,000,000 $1,033,333 | 66,667 1,000,000 $1,066,667 |
| | | —$2,100,000— | | | —3,100,000— | |
| **3. de la Santos —⅓ fee to attorneys —50% to Nat'l. Union** | | | | | | |
| Recovered from other parties to date $3,295,345 | $1,647,673 | $549,224 | $1,098,449 | $1,098,449 | $1,098,449 | $1,098,449 |
| Future recovery of each $100 until Nat'l. Union receives $3,000,000.00 | 50.00 | 16.67 | 33.33 | 33.00 | 33.33 | 33.33 |

|  | | | | | | |
|---|---|---|---|---|---|
| Total needed to pay back Nat'l. Union | $3,000,000 | $1,000,000 —$6,000,000— $2,000,000 | $3,000,000 | $3,000,000 —$9,000,000— $3,000,000 | |

**4. Holland American Insurance —25% to attorney —65% to Nat'l. Union up to $3,220,410**

| | | | | | | |
|---|---|---|---|---|---|---|
| Recovered from other parties to date $3,447,145 | $2,240,644 | $301,625 | $904,876 | $1,680,483 | $861,786 | $904,876 |
| Future recovery of each $100 until Nat'l. Union receives $3,220,410 | 65.00 | 8.75 | 26.25 | 48.75 | 25.00 | 26.25 |
| Total needed to pay back Nat'l. Union | $3,220,410 | $433,517 —$4,954,477— | $1,300,550 | $3,220,410 | $1,651,492 —$6,605,969— | $1,734,067 |

**5. Houston General Ins. —25% fee to attorney —65% to Nat'l. Union up to $3,286,133**

| | | | | | | |
|---|---|---|---|---|---|---|
| Recovered from other parties to date $3,526,390 | $2,292,154 | $308,559 | $925,677 | $1,719,115 | $881,598 | $925,677 |
| Future Recovery of each $100 until Nat'l. Union receives $3,286,133 | 65.00 | 8.75 | 26.25 | 48.75 | 25.00 | 26.25 |
| Total need to pay back Nat'l. Union | $3,286,133 | $442,364 —$5,055,589— | $1,327,092 | $3,286,133 | $1,685,196 —$6,740,786— | $1,769,456 |

**6. Lexington Ins. Co. —25% fee to attorney —65% to Nat'l. Union up to $3,191,540**

| | | | | | | |
|---|---|---|---|---|---|---|
| Recovered from other parties to date $3,427,334 | $2,227,767 | $299,892 | $899,675 | $1,670,825 | $856,834 | $899,675 |
| Future recovery of each $100 until Nat'l. Union receives $3,191,540 | 65.00 | 8.75 | 26.25 | 48.75 | 25.00 | 26.25 |
| Total needed to pay back Nat'l. Union | $3,191,540 | $429,630 —$4,910,062— | $1,288,891 | $3,191,540 | $1,636,687 —$6,546,749— | $1,718,522 |

204

| | | | | | | |
|---|---|---|---|---|---|---|
| **7. North Brook Excess & Surplus Ins. —25% fee to attorneys —65% to Nat'l. Union up to $3,567,494** | | | | | | |
| Recovery from other parties to date $3,823,558 | $2,485,313 | $334,561 | $1,003,684 | $1,863,985 | $965,890 | $1,003,684 |
| Future recovery of each $100 until Nat'l. Union receives $3,567,494 | 65.00 | 8.75 | 26.25 | 48.75 | 25.00 | 26.25 |
| Total needed to pay back Nat'l. Union $3,567,494 | $480,240 | $1,519,469 | $3,567,494 | $1,829,484 | $1,920,958 | |
| | —$5,488,452— | | | —$7,317,936— | | |
| **8. Great American Supplies Lines —25% fee to attorneys —65% to Nat'l. Union up to $1,314,454** | | | | | | |
| Recovered from other parties to date $1,406,594 | $914,286 | $123,077 | $369,231 | $685,715 | $351,648 | $369,231 |
| Future recovery of each $100 until Nat'l. Union receives $1,314,454 | 65.00 | 8.75 | 26.25 | 48.75 | 25.00 | 26.25 |
| Total needed to pay back Nat'l. Union $1,314,454 | $176,946 | $530,837 | $1,314,454 | $674,079 | $707,783 | |
| | —$2,022,237— | | | —$2,696,316— | | |
| **9. Employer's Mutual Casualty Co. —25% fee to attorney —65% to Nat'l. Union up to $1,169,371** | | | | | | |
| Recovered from other parties to date $1,248,104 | $811,268 | $109,209 | $327,627 | $608,450 | $312,026 | $327,627 |
| Future recovery of each $100 until Nat'l. Union receives $1,169,371 | 65.00 | 8.75 | 26.25 | 48.75 | 25.00 | 26.25 |
| Total needed to pay back Nat'l. Union $1,169,371 | $157,415 | $472,246 | $1,169,371 | $599,677 | $629,661 | |
| | —$1,779,082— | | | —$2,398,710— | | |
| **10. National Surety Corp. —25% fee** | | | | | | |
| Recovery from other parties to date $356,601 | $231,791 | $31,203 | $98,608 | $173,843 | $89,150 | $93,608 |

**to attorneys —65% to Nat'l. Union up to $336,596**

| | (1) | (2) | (3) | (4) | (5) | (6) |
|---|---|---|---|---|---|---|
| Future recovery of each $100 until Nat'l. Union receives $336,596 | 65.00 | 8.75 | 26.25 | 48.75 | 25.00 | 26.25 |
| Total needed to pay back Nat'l. Union | $ 336,596 | $ 45,311 | $135,933 | $ 336,596 | $ 172,613 | $ 181,244 |
| | | —$517,840— | | | —$690,453— | |

**11. Ireland —25% fee to Attorney —65% to Nat'l. Union up to $2,099,414**

| | (1) | (2) | (3) | (4) | (5) | (6) |
|---|---|---|---|---|---|---|
| Recovered from other parties to date $2,238,663 | $1,455,131 | $ 195,883 | $ 587,649 | $1,091,348 | $ 559,666 | $ 587,649 |
| Future recovery of each $100 until Nat'l. Union receives $2,099,414 | 65.00 | 8.75 | 26.25 | 48.75 | 25.00 | 26.25 |
| Total needed to pay back Nat'l. Union | $2,099,414 | $ 282,613 | $ 847,840 | $2,097,414 | $1,076,623 | $1,130,454 |
| | | —$3,229,868— | | | —$4,306,490— | |

**12. Nueces County Navigation Dist. #1 (Port) —25% fee to attorney —65% to Nat'l. Union up to $314,588**

| | (1) | (2) | (3) | (4) | (5) | (6) |
|---|---|---|---|---|---|---|
| Recovered from other parties to date $336,790 | $ 218,914 | $ 29,469 | $ 88,407 | $ 164,185 | $ 84,198 | $ 88,407.00 |
| Future recovery of each $100 until Nat'l. Union receives $314,588 | 65.00 | 8.75 | 26.25 | 48.75 | 25.00 | 26.25 |
| Total needed to pay back Nat'l. Union | $ 314,588 | $ 42,348 | $127,045 | $ 314,588 | $ 161,327 | $ 169,394 |
| | | —$483,982— | | | —$645,309— | |

[1] All amounts are rounded to the nearest dollar.

[2] National Union receives none of the first $100,000.